UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CRIMINAL ACTION NO. 08-109-C

UNITED STATES OF AMERICA,                                      PLAINTIFF,

V.                          MEMORANDUM OF OPINION AND ORDER

WILLIAM L. HART II,                                            DEFENDANT.

* * * * * * * * *

This matter is before the court upon the Report and Recommendation of

United States Magistrate Judge James D. Moyer (R. 108).  Having reviewed the

record *de novo* in light of the defendant's objections (R. 110), pursuant to 28

U.S.C. § 636(b)(1)(C), the court accepts the Report and Recommendation.  The

court construes four (R. 22, 24, 25, 26) of six of the defendant's motions

reviewed by the Magistrate Judge, in part, as motions in limine.  The court will

deny those motions, except the defendant's motion to exclude photographs

alleged to have been found on the defendant's workplace computer (R. 24), which

it will grant in respect to the photographs of "young" women and deny in all other

respects based on Federal Rules of Evidence 403 and 404(b).

I. Motions to suppress

As explained by the Magistrate Judge, evidence found on the workplace

computer and evidence associated with the two Yahoo! accounts should not be

suppressed based on violations of the defendant's right to counsel under the Fifth

Amendment to the U.S. Constitution.[1]  Though the defendant's elicited response to a question about his place of work was obtained in violation of that right, the United States can establish by a preponderance of the evidence that the workplace computer and evidence gathered therefrom ultimately or inevitably would have been discovered by lawful means. *See Nix v. Williams*, 467 U.S. 431, 444 (1983).  As the adopted report states, and to which the defendant specifically objects, viewing affairs as they existed the instant before the impermissible questioning by Detective Jackman, had the particular question about where the defendant works not been asked, the workplace computer would have been discovered by means of information subpoenaed from Yahoo! Inc.  This information led the police to BellSouth, which would have led them via Internet Protocol address 70.147.67.90 to Saturn Distributing, which would have led them, via Dwayne Hay's associations, to SkyWay USA, which would have led them to Dwayne Hay himself, who would have given them permission to search, just as he did in the case after the impermissible question was asked.

The defendant objects to this chain of events as too tenuous to be deemed inevitable.  Before that entire process would have transpired, however, the police would have found the defendant's place of work by other means.  Before he asked

---

[1] "The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation." *Edwards v. Ariz.*, 451 U.S. 477, 486 (1981).  "It is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Id.* at 485.

2

the impermissible question, Detective Jackman believed that the defendant had used a workplace computer to send incriminating messages.  He also knew some information about the defendant from the content of the chats, and soon after, more biographical information from e-mail provided by Yahoo! Inc.: the suspect, under the name "steve smith," using an account of "trimblecounty9inch," "work[ed] in the bluegrass industrial park."[2]  A different e-mail provided by Yahoo! from the same e-mail account was typed by someone calling himself "bill."[3]  The instant before the impermissible question, *see United States v. Alexander*, 540 F.3d 494, 502 (6th Cir. 2008) (quoting *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995)), the police were conducting an investigation in which they were actively looking for a workplace computer of a man about whom they already knew the name, suspected age,[4] physical description, address, telephone number, suspected marital status,[5] motor vehicle details, general location of contacts,[6]

---

[2]R. 59, Gov't Ex. 6, e-mail from steve smith <trimblecounty9inch@yahoo.com> to TKH1RN@aol.com (Apr. 29, 2006, 07:25:54 PDT).

[3]R. 59, Gov't Ex. 6, e-mail from steve smith <trimblecounty9inch@yahoo.com> to Indianababe72@wmconnect.com (Apr. 6, 2006, 11:15:26 PDT).

[4]*See* R. 59, Gov't Ex. 1.

[5]"steve smith (11/28/2006 4:45:48 PM): married..that a problem?"  R. 29, Chat Log at 6.

[6]"steve smith: u near hudson lane then...
steve smith: across from ryans steak house probally
ashley _ky 2106: yes, u do know area

suspected work schedule,[7] with an employer who would consent to a search. *See* R. 57, Gov't Ex. 9; R. 97. From the evidence provided by Yahoo!, law enforcement would soon know also his nickname, "bill," and the general location of his workplace, "bluegrass industrial park." *See* R. 59, Gov't Ex. 6. To be sure, not every piece of evidence of a crime will be inevitably discovered by standard, lawful police work. But in this case, the workplace computer was already the evidentiary target of the investigation, and the police knew far too many details about the defendant for them not to be able to find his workplace. Notwithstanding the inevitable chain of events described by the Magistrate Judge, with basic, lawful methods, including but not limited to records searches and personal interviews, the police would have found the location of the targeted computer, SkyWay USA. Needing to find out where the defendant worked, if by no other method, the police would have submitted the matter to the grand jury for issuance of subpoenas to the federal or state revenue authorities for William L. Hart II's employment information.

"The inevitable discovery doctrine serves a valid purpose, clearly delineated

---

steve smith: yep...
steve smith: I grew up around there...
steve smith: so I know
steve smith: I get over that way quite a bit
ashley_ky2106: k
steve smith: have buddies there." R. 29, Chat Log, 5 (dates and times omitted).

[7]*See* R. 29, Chat Log (suspect communicating intermittently about when he is free to leave work).

by the Supreme Court – to ensure that the Government is not put in a worse position because of the misconduct than it would have been absent the misconduct." *Alexander*, 540 F.3d at 502.  Given what the police already knew, and that the workplace computer was already a primary target of the investigation, to say the police would not have found the defendant's place of work in the course of their lawful investigation would undoubtedly put the plaintiff in a worse position than it would be in had Detective Jackman never asked the impermissible question.  With this in mind, the court agrees with the Magistrate Judge that evidence from the workplace computer should not be suppressed based on a violation of the defendant's right to counsel.

As further explained by the Magistrate Judge, the question of suppression of evidence that was provided by Yahoo!, but not found on the defendant's computer, hinges on whether law enforcement committed a constitutional violation of the Stored Communications Act.  It did not.  Whether the defendant had a legitimate expectation of privacy in his Yahoo! subscriber or account information and "Content" is a two-part inquiry: "'[f]irst,...whether the individual, by conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private...[s]econd,...whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable.'" *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (quoting *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000))  The record indicates that the

defendant had to agree to Yahoo! Terms of Service that, as of November 22,

2006, expressly notified Yahoo! users of the firm's policy of disclosing

"Content."[8]  By his conduct, the defendant did not show that he sought to

preserve his subscriber or account information and his "Content" as private.  Some

---

[8]"You acknowledge, consent, and agree that Yahoo! may access, preserve and disclose your account information and Content if required to do so by law or in a good faith belief that such access, preservation, or disclosure is reasonably necessary to: (i) comply with legal process; (ii) enforce the TOS; (iii) respond to claims that any Content violates the rights of third parties; (iv) respond to your requests for customer service; or (v) protect the rights, property or personal safety of Yahoo!, its users and the public." *See Warshak v. United States*, 2006 WL 4670945 at n.10 (6th Cir. 2008) (Amici Br. Nov. 22, 2006). "Content" is defined as "all information, data, text, software, music, sound, photographs, graphics, video, messages, tags, or other materials." *See* Yahoo! Terms of Service, ¶ 6 (Nov. 24, 2008), http://info.yahoo.com/legal/us/yahoo/utos/utos-173.html (last visited Aug. 13, 2009).  No other definition of "Content" from Yahoo! Inc. has been provided by the parties or is otherwise available.  However, because the 2006 and 2008 Terms are identical in at least some respects, and because the word "Content" implies substance, the definition of "Content" in the Yahoo! Terms of Service during or before 2006 would have likely included "messages." *See Warshak*, 2006 WL 4670945 at n.10; *compare* Yahoo! Terms of Service, ¶ 6 (Nov. 24, 2008); *see also* R. 108, n. 85.  Also, it is likely that the Yahoo! Terms of Service in effect during or before 2006 contained language substantially similar to the following, such that the defendant would have been notified of changes to the Terms of Service in regard to disclosure of "Content": "Yahoo! may provide you with notices, including those regarding changes to the TOS...Your agreement to this TOS constitutes your agreement that you are deemed to have received any and all notices that would have been delivered had you accessed the Yahoo! services in an authorized manner." *See* Yahoo! Terms of Service, ¶ 24 (Nov. 24, 2008).

As a historical matter, the Privacy Policy – distinguished from the Terms of Service – of Yahoo!, effective March 28, 2002, states, "Yahoo! does not rent, sell, or share personal information about you with other people or nonaffiliated companies except to provide products or services you've requested, when we have your permission, or under the following circumstances:...[w]e respond to subpoenas, court orders, or legal process, or to establish or exercise our legal rights or defend against legal claims..." http://privacy.yahoo.com /privacy/us/paydirect/ (last visited Aug. 13, 2009).

of what the plaintiff contends is the defendant's account information, in fact, was on display to the public in December 2006. *See* R. 54, 12:1. Further, the defendant agreed to Terms of Service that allowed disclosure of his subscriber or account information[9] and messages. Whether or not society is prepared to recognize as reasonable an expectation of privacy in all e-mail communications, the evidence in the record does not show that the defendant sought to preserve as private that which the plaintiff now seeks to introduce into evidence. *See Waller*, 426 F.3d at 844. Therefore, the court agrees with the Magistrate Judge, and despite law enforcement's failure to provide notice in accordance with 18 U.S.C. § 2703 (b)(1)(B), the court finds no constitutional violation of the Stored Communications Act. Thus, exclusion of the evidence is not available as a remedy. *See* 18 U.S.C. § 2708.

## II. Motions in limine

A.  The defendant moves the court to exclude transcripts of Yahoo! Messenger chats and instant messages (R. 22) based on Federal Rules of Evidence 106, 401, 403, 1001, 1002, and 1006.[10]

"When a writing or recorded statement or part thereof is introduced by a

---

[9]*Cf. Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) (holding, in a non-criminal context, that "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person – the system operator").

[10]*See generally United States v. Burt*, 495 F.3d 733; *United States v. Tank*, 200 F.3d 627 (9th Cir. 2000); *United States v. Simpson*, 152 F.3d 1241 (10th Cir. 1998) (discussing admissibility of properly authenticated chat logs).

party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106.  The defendant argues that if the court admits the chat logs offered by the plaintiff, it should, in fairness, admit all recorded activity in the chat room during the time in which the suspect and "Ashley" were chatting.  However, as the defendant admits, this recorded activity could contain "hundreds of thousands" of communications.  Presumably, these other communications do not involve the suspect.[11]  They are not related at all to the conversations that transpired between the suspect and "Ashley."  In the chat logs the plaintiff seeks to admit, the time and date is shown beside each message sent.  The questions and answers between the suspect and "Ashley" relate closely to one another.  *See* R. 29, Chat Logs.  Thus far, despite the vast amount of presumed communications among the many, different accounts in the chat room, the defendant has not argued that the suspect was actually chatting with anyone other than "Ashley."  Therefore, all other, simultaneous Yahoo! chat communications that may have been recorded by or in the possession of the plaintiff need not be introduced with the offered chat logs, and the logs standing alone are admissible under Rule 106.  The defendant may, however, seek to introduce evidence as to weight and credibility.  *See* Fed. R. Evid. 104(b).

---

[11]If these other communications do involve the suspect, and if the plaintiff knows that it is in possession of them, then they are presumed to fall outside of what the plaintiff believes to be discoverable under its obligations, such as the duty to turn over exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' does not mean the damage to a defendant's case that results from the legitimate, probative force of the evidence." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). The chat logs are relevant because they are direct evidence of the charged crimes, and are being offered to show intent to induce, persuade, entice, and coerce a minor. They show the suspect sending sexually charged messages, and contain indications that "Ashley" communicated to the suspect that she was a minor. *See* R. 29, Chat Logs. In short, they are relevant to show the identity of the defendant, and varied conduct which the plaintiff contends meets the elements of the crimes charged. The probative value of the chat logs between the suspect and "Ashley," which is great, is not substantially outweighed by the danger of unfair prejudice, which is minimal. Though they may be damning as evidence, the chat logs do not visually display any graphic, pictorial content or cast the defendant in any negative light that is unrelated to the crimes that are charged. They are relevant and admissible under Rules 401 and 403.

9

The "Best Evidence Rule" under Rules 1001 and 1002 requires that "to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required," unless an exception is provided in another Rule." Fed. R. Evid. 1002. As the participant posing as "Ashley," Detective Jackman is able to testify from personal knowledge concerning the conversation shown by the chat logs, which reduces the risk of error in reliance upon the chat logs only to show the substance of the conversation between the suspect and "Ashley." Further, the plaintiff is offering the chat logs so that the jury need not rely only on Detective Jackman's testimony as to the substance of the chats. The chat logs were created by a Yahoo! chat program which archives the messages as they are transmitted. Thus, the process of copying each message, which could create risk of error, never occurred. The chat logs are admissible under Rules 1001 an 1002.

Rule 1006 provides that voluminous writings, recordings, or photographs may be presented in the form of a chart, summary, or calculation when they cannot be examined conveniently in court. *See* Fed. R. Evid. 1006. The defendant argues that the chat logs that the plaintiff seeks to admit are an inadmissible summary of evidence by the government. The plaintiff, on the other hand, argues that all of each chat log, not just portions of them, will be presented to show all of the conversations between the defendant and "Ashley." As discussed above, the substance of what the defendant admits would be days' worth of viewing of video

tape or "hundreds of thousands" of simultaneous communications in the chat room by Yahoo! accounts unrelated to the case are irrelevant and will not need to be considered by the jury.  The chat logs will not be excluded under Rule 1006. Finally, the suspect's portion of the chats contained in the chat logs are admissible as non-hearsay admissions of a party-opponent under Rule 801(d)(2).  They are offered against the defendant, and are purported to be his statements to "Ashley." See Fed. R. Evid. 801(d)(2)(A).[12]  "Ashley's," or Detective Jackman's portion of the chats, are not being offered for the truth of the matter asserted in them; therefore they are admissible non-hearsay.  See Fed. R. Evid. 801(c).

B.  The defendant moves the court to exclude photographs alleged to have been found on the defendant's workplace computer (R. 24) because they are irrelevant and highly prejudicial.  The photographs in question that the plaintiff seeks to admit are those of male genital organs ("MGO's") and of "young," partially nude females.[13]  The defendant argues further that these photographs will be used to show propensity rather than a permissible aspect of the case against the defendant under Rule 404(b).  The plaintiff seeks to admit the photographs of MGO's to show identity, as well as enticement, persuasion, inducement, and coercion in violation of 18 U.S.C. § 2242(b), the offense charged in Count 1 of the

---

[12]"No guarantee of trustworthiness is required in the case of an admission," and this "avenue to admissibility" is to be given "generous treatment."  Fed. R. Evid. 801 advisory committee's note.

[13]The plaintiff does not allege that the photographs of the "young" females are child pornography.

11

superseding indictment.  In multiple pleadings, the defendant has contested the notion that the defendant is the same person who was chatting with "Ashley" in Yahoo! chat rooms.  The avatars[14] for what were allegedly his Yahoo! profiles were pictures of MGO's.  Since identity is at issue in the case, the government may properly admit the photographs of MGO's found on what it alleges is the defendant's workplace computer to show that he, not someone else, violated the statutes as alleged in the superseding indictment.

Even though the defendant is not charged with possession of child pornography, the plaintiff seeks to admit photographs of "young," partially-nude females from the workplace computer under Rule 404(b) to show motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or accident.[15]  To prove violations of the statutes in this case, the plaintiff must prove the defendant's intent to conduct certain activities with a minor.  Admission of these photographs of "young" females, however, presents a number of problems. First, unlike the workplace computer photographs of MGO's that are linked to the

---

[14]"The term 'avatar' derives etymologically from the Sanskrit word for crossing down or descent and was used originally to refer to the earthly incarnation of a Hindu deity...[s]ince the advent of computers, however, 'avatar' is also used to refer to an Internet user's virtual representation of herself in a computer game, in an Internet chat room, or in other Internet fora." *Bragg v. Linden Research, Inc.*, 487 F.Supp.2d 593, 595 (E.D. Pa. 2007) (internal citations omitted).

[15]*Cf. United States v. Caldwell*, 1999 WL 238655, *7 (6th Cir. 1999) (holding that the district court properly admitted items of child erotica intermingled with child pornography in a small room because they were evidence of knowledge or intent, and because the jury is entitled to know the 'setting' of a case, and the time, place, and circumstances of the acts which form the basis of the charge).

avatars of MGO's for what are allegedly the defendant's Yahoo! accounts, the photographs of the "young" females found on the workplace computer, by themselves, are not associated with the identity of the defendant. If there were evidence to show that the pictures of the "young" females were pictures of minors, they may be properly admissible to show intent to engage in certain activities with minors. At present, however, there is no evidence in the record to show the age of the individuals in the photographs, and they are not properly admissible to prove any of the permissible aspects under Rule 404(b).[16] Since there has been no evidence submitted to show that the females in the photographs are minors, the court will not presume that they are minors at the defendant's expense. Explicit photographs of adults will not be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or absence of accident under Rule 404(b) in regard to engaging in sexual activities with minors.[17] In light of Rule 403, admission of the photographs of only the "young" females under Rule 404(b), with a flimsy connection to the offenses charged, no foundational facts such as when, where, and by whom they were taken, or

---

[16]However, to show identity, certain photographs found on the workplace computer may be offered because they are identical to those attached to e-mails associated with the "trimblecounty9inch" account. The court will caution the jury to consider them only for the purpose of identity, and for no other purpose.

[17]Congressional addition of Rules 413, 414, and 415 to the Federal Rules of Evidence indicates that Congress has created exceptions to the general restriction of Rule 404(b) in the realm of sex crimes. *See Stout*, 509, F.3d at 800-802. It has not done so for evidence such as that which has been submitted in this case.

evidence of the actual age of the females depicted in those photos, despite a limiting instruction from the court, would serve primarily to confuse and mislead the jury about the defendant's charged misconduct, and would show that he has the propensity to engage in bad acts.  While photographs of the MGO's offered by the government are admissible, the photographs of the "younger" females offered by the plaintiff under Rule 404(b) are not admissible under that Rule and Rule 403.

C.  The defendant moves the court to exclude photographs alleged to be associated with his Yahoo! account (R. 25) because they are irrelevant, prejudicial, and have not been properly authenticated.  To prove identity and the elements of the crimes charged, as discussed above, photographs of one or more MGO's associated with the accounts the plaintiff claims to be those of the defendant are admissible under Rules 401 and 403.  The plaintiff will have an opportunity at trial to properly authenticate evidence that does not already have appropriate affidavits attached for self-authentication under Rule 902 (11).  *See* R. 109.

D.  The defendant moves the court to exclude evidence associated with "trimblecounty9inch" (R. 26) because it is irrelevant and prejudicial.  The plaintiff, in its response, discusses at least one photograph of an MGO, an e-mail, and evidence of brief chat communications associated with that account.  For the reasons stated above, the photographs of MGO's are relevant to prove identity and the elements of the charged offenses.  The e-mail discussed by the plaintiff is signed by a person calling himself "bill."  The defendant's first name is William; therefore the e-mail is relevant to prove identity, which is disputed in the case.

14

Any evidence of chat communications is relevant to show identity and the elements of the charged offenses, as "Ashley" received at least one chat message from "trimblecounty9inch."

Not all of the evidence provided by Yahoo! associated with "trimblecounty9inch" was specifically addressed by the parties in their motions. Aside from the e-mail addressed by the plaintiff in its response (R. 32), the evidence contains five other e-mails, some of which have photographs attached. Each of these e-mails is either from or to the account of "trimblecounty9inch," and each contains information relevant to identity.  All of the photographs, except for one, appear to be the same photographs that are part of a collection found on the what the plaintiff contends is the defendant's workplace computer.  The e-mails that do not have attached photographs contain biographical information relevant to identity, such as "I work in the bluegrass industrial park," or, as the plaintiff has pointed out, are signed by "bill."  Therefore, the evidence associated with this account is admissible.  Accordingly,

**IT IS ORDERED** that the Report and Recommendation of Magistrate Judge Moyer (R. 108) is **ADOPTED** as the opinion of the court.

**IT IS FURTHER ORDERED** that the defendant's motion to exclude transcripts of Yahoo! Messenger chats and instant messages (R. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to exclude photographs alleged to have been found on the defendant's workplace computer

(R. 24) is **GRANTED** to the extent that the photographs of females that the plaintiff seeks to introduce into evidence under Rule 404(b) are inadmissible under that Rule and Rule 403; and **DENIED** in respect to photographs of male genital organs.

**IT IS FURTHER ORDERED** that the defendant's motion to exclude photographs alleged to be associated with his Yahoo! account (R. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to exclude evidence associated with "trimblecounty9inch" (R. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to suppress evidence seized from Internet service providers in violation of the Stored Communications Act (R. 44) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to suppress the workplace computer seized in violation of *Miranda v. Arizona* (R. 53) is **DENIED**.

Signed on August 17, 2009

*Jennifer B. Coffman*

Jennifer B. Coffman, Judge
**United States District Court**

16